UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-23469-CIV-KING

THEODORE D. KARANTSALIS,

    Plaintiff,

v.

DEPARTMENT OF THE NAVY,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment (DE #7), filed March 27, 2013. Upon review of the record, the Court finds that the Motion should be granted.

### I. BACKGROUND

Plaintiff Karantsalis seeks disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, of "a copy of the investigative report, including probable and factual findings, of a U.S. Navy A-7E Corsair II jet that crashed into an apartment complex" in Alameda, California on February 7, 1973. (Compl., ¶ 1, DE #1). Plaintiff is an academic librarian and freelance journalist. (*Id.* at ¶ 3). His Complaint alleges that he first requested a copy of the report on July 15, 2010. (*Id.* at ¶ 6). Normally, when an aviation accident occurs, the Navy conducts two separate inquiries: a report completed

1

pursuant to the Manual of the Judge Advocate General ("JAGMAN") and an aviation mishap report. (Patterson Dec., ¶ 6, DE #7-1).

On September 29, 2010, the Office of the Judge Advocated General ("OJAG") sent Plaintiff a letter indicating that upon searching the National Records Center in Suitland, Maryland,[1] "the entire record is missing and presumed lost." (DE #7-2, p. 6). Plaintiff did not appeal the adequacy of this search within sixty days, as advised by the letter. Instead, Plaintiff submitted another FOIA requested to the OJAG by email on February 28, 2012. (Patterson Dec., ¶ 10). OJAG again informed Plaintiff on March 6, 2012 that the record was missing and presumed lost. On this occasion, Plaintiff timely appealed, and on April 24, 2012 the OJAG's Office of General Litigation Division issued a final determination denying Plaintiff's appeal because the search for the JAGMAN report was deemed adequate. (*Id.* at ¶ 11).

Meanwhile, the Navy had not looked for the aviation mishap report. On May 30, 2012, the Naval History and Heritage Command referred Plaintiff's July 15, 2010 request to the Naval Safety Center. (*Id.* at ¶ 12). On June 28, 2012, the Naval Safety Center released a redacted version of the aviation mishap report, claiming that the redacted information was exempt from disclosure under 5 U.S.C. §§ 552(b)(5)–(6). (Compl., ¶ 13; Patterson Dec., ¶ 13). Plaintiff timely appealed the partial withholding of the report, and that appeal was denied on August 15, 2012. (Patterson Dec., ¶ 21).

The above-styled action was filed on September 24, 2012. On March 27, 2013, Defendant filed its Motion for Summary Judgment (DE #7). Plaintiff did not file a

---

[1] The OJAG's database indicated the National Records Center as the location of the JAGMAN report.

Response to said Motion but instead filed a brief Cross Motion for Summary Judgment (DE #8).[2] Though not a Response to Defendant's Motion, the Court will treat Plaintiff's Cross-Motion as such in reviewing Defendant's Motion in the light most favorable to Plaintiff.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24. The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

FOIA claims generally should be resolved at the summary judgment stage. *Miccosukee Tribe of Indians of Florida v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). "[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has

---

[2] Therein, Plaintiff states, without citing to any facts in the record, that "Defendant has failed to demonstrate that Exemption 5 should apply . . . ." (DE #8). Plaintiff does not address Defendant's withholding of some information under Exemption 6. Defendant filed a Response (DE #10) to Plaintiff's Cross Motion on April 22, 2013.

been produced . . . or is wholly exempt from the Act's inspection requirements." *Bonilla v. U.S. Dep't of Justice*, 798 F. Supp. 2d 1325, 1329 (S.D. Fla. 2011) (internal quotation marks omitted). The government may use affidavits or declarations to meet its burden. *Miccosukee Tribe*, 516 F.3d at 1258. Such documents are "accorded a presumption of good faith." *Florida Immigrant Advocacy Ctr. V. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1343 (S.D. Fla. 2005).

### III. DISCUSSION

In reviewing the pleadings before the Court and the Declaration of Robbin Patterson, head of the Defendant's Chief of Naval Operations, Privacy and Freedom of Information Act Execution Office, the Court considers two things. First, the Court determines whether Defendant's search for Plaintiff's requested documents was reasonable as a matter of law. Second, the Court evaluates whether the withheld material was exempt pursuant to FOIA Exemptions 5 or 6.

The agency upon which a FOIA request is made bears the burden of "show[ing] beyond a material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Miccosukee Tribe*, 516 F.3d at 1248. Reasonableness is "dependent upon the circumstances of the case." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The "search need only be reasonable; it does not have to be exhaustive." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 2985). The Patterson Declaration describes in detail the reasonable efforts that Defendant made to locate the documents Plaintiff requested. Moreover, where Plaintiff's FOIA request only asked for "a copy of the final investigative report," Defendant attempted to locate both

4

the JAGMAN investigative report and the aviation mishap report. The documents Plaintiff sought were, at the time, almost forty years old and had been relocated at least once each. Defendant successfully located the aviation mishap report and, under these circumstances, Defendant's efforts to locate the missing JAGMAN report were reasonable. *See Miccosukee Tribe*, 516 F.3d at 1248; *Miller*, 779 F.2d 1378.

Plaintiff also seeks judicial review of Defendant's withholding certain information from the aviation mishap report under FOIA Exemptions 5 and 6, two of FOIA's nine exemptions. With these exemptions, Congress recognized . . . that public disclosure is not always in the public interest." *C.I.A. v. Sims*, 471 U.S. 159, 166–67 (1985). However the exemptions are not to have the effect of subsuming the statute's policy goal of transparency and government accountability.

The Patterson Declaration states that all reasonably segregable factual information in the report was provided. (Patteson Dec., ¶ 14). However, under Exemption 5, statements by witnesses and opinions of medical officers and other evaluators, the mishap board and endorsers were withheld. (*Id.* at ¶¶ 14–16). Defendant claims that these materials are protected by the *Machin* privilege and the deliberative process privilege. In *Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963), the court noted that air crash safety investigators could not compel witness testimony and thus relied on voluntarily shared information. *Id.* at 339. Accordingly, any information from private parties was privileged, even once in the hands of the government. *Id.* "The privilege extends to any conclusions that might be based in any fashion on such privileged information. Also, a recognized privilege attaches to any portions of the report reflecting Air Force deliberations or

5

recommendations as to policies that should be pursued." *Id.*; *see also United States v. Weber Aircraft Corp.*, 465 U.S. 792, 795 (1984) ("To encourage witnesses to speak fully and frankly, they are not sworn and receive an assurance that their statements will not be used for any purpose other than accident prevention."). The Patterson Declaration indicates that only witness statements and opinions of those involved in the evaluation were redacted. These are covered by the *Machin* privilege and thus need not be disclosed pursuant to Exemption 5. Accordingly, the Court need not consider Defendant's alternative argument for exemption under the deliberative process privilege.

Additionally, under FOIA Exemption 6, Defendant withheld "[n]ames, signatures, initials, addresses, telephone numbers, individuals squadrons or units, social security numbers, and similar information pertaining to board members, evaluators, endorsers, and individuals other than the pilot involved in the mishap." (*Id.* at ¶ 17). This exemption protects against privacy intrusions when the public benefit does not outweigh the cost to the individual. *Office of the Capital Collateral Counsel, Northern Region of Florida v. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003). The Supreme Court has given this exemption broad scope. *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599–603 (1982). The statute's purpose in holding governmental action accountable to the people "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *U.S. Dep't of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 773 (1989). The personal information that Defendant withheld from Plaintiff is the type that Exemption 6 privileges.

## IV. CONCLUSION

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion for Summary Judgment (**DE #7**) be, and is hereby, **GRANTED**. Thus, it is further **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's Cross Motion for Summary Judgment (DE #8) be, and is hereby, **DENIED**. The Clerk **shall CLOSE** this case. All pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 24th day of April, 2013.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

**Cc: All Counsel of Record**